In re: Seroquel XR (Extended Release Quetiapine Fumarate) Litigation

All End-Payor Class Actions

Lead Dkt. No. 19-cv-8296 (CM)

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER**

McMahon, C.J.:

In this class action, eight[1] end-payor purchaser plaintiffs ("EPPs") bring a consolidated antitrust class action on behalf of themselves, and all others similarly situated, against Defendants AstraZeneca Pharmaceuticals L.P. and AstraZeneca L.P. (collectively, "AstraZeneca"), AstraZeneca UK Limited ("AZ UK"), Handa Pharmaceuticals, LLC ("Handa"), and Par Pharmaceutical, Inc. ("Par") (collectively, "Defendants") for their allegedly anticompetitive behavior in violation of various state laws. (*See* Consolidated Am. Compl. ("CAC") at 1, Dkt. No. 46.) This action arises from the same facts as the lead direct purchaser class action, *JM Smith Corporation v. AstraZeneca Pharmaceuticals L P et al.*, No. 19-cv-7233 (the "DPP Case" or "DPP Dkt.").

Defendants AstraZeneca, AZ UK, Handa, and Par move to dismiss for lack of jurisdiction, improper venue, or in the alternative, to transfer this action to the District of Delaware. (Dkt. No. 107.)

For the reasons stated below, Defendants' motion to transfer is GRANTED.

---

[1] Per the stipulation so-ordered October 2, 2019, any later-filed end-payor actions are deemed part of the Consolidated Amended Complaint ("CAC," Dkt. No. 46) and consolidated unless an objection is filed and sustained. (Dkt. No. 45 at ¶ 3.) Two actions were subsequently filed, without objection, and thus are subsumed by the CAC: *NECA-IBEW Welfare Trust Fund v. AstraZeneca Pharmaceuticals L.P. et al*, 19-cv-09171, and *The Uniformed Firefighters' Association of Greater New York Security Benefit Fund v. AstraZeneca Pharmaceuticals L.P. et al*, 19-cv-09271 (the "UFA Action" or "UFA Dkt."). Plaintiff NECA-IBEW Welfare Trust Fund has since voluntarily dismissed all of its claims against Defendants by notice dated January 10, 2020. (Dkt. No. 123.)

1

## BACKGROUND

*A. Parties*

EPP Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund ("FOP") is a governmental plan for current and retired sworn officers from the City of Miami Police Department and their dependents. (CAC ¶ 34.) FOP is a Florida citizen and maintains its principal place of business in Miami, Florida. (*Id.*)

EPP Law Enforcement Health Benefits ("LEHB") is a voluntary employee benefits plan organized pursuant to Section 501(c) of the Internal Revenue Code to provide health benefits to its eligible participants and beneficiaries – current and retired sworn Philadelphia Police officers, Deputy Sheriffs, and County Detectives, and their dependents. (*Id.* ¶ 35.) LEHB's principal place of business is in Philadelphia, Pennsylvania. (*Id.*)

EPP the Mayor and City Council of Baltimore is a municipality located in Baltimore, Maryland. (*Id.* ¶ 36.)

EPP Pipe Trades Services MN Welfare Fund ("Pipe Trades Fund") is a Taft-Hartley fund authorized under Section 302 (c)(5) of the National Labor Relations Act and an employee welfare benefit plan as defined in Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. §1001 *et seq.* that provides benefits to its plan members, their spouses, and dependents. (*Id.* ¶ 37.) Pipe Trades Fund's principal place of business is in White Bear Lake, Minnesota. (*Id.*)

EPP Sergeants Benevolent Association Health & Welfare Fund ("SBA") was established for the purpose of providing prescription drug benefits to active and retired New York City Police Department Sergeants and their dependents. (*Id.* ¶ 38.) SBA is located in New York. (*Id.*)

EPP the Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, and 137R ("IUOE") is a multi-employer health and welfare fund. (*Id.* ¶ 39.) IOUE is located in Briarcliff Manor, New York. (*Id.*)

EPPs the Uniformed Firefighters Association of Greater New York Security Benefit Fund and the Retired Firefighter Security Benefit Fund of the Uniformed Firefighters Association (collectively, the "UFA Funds") are health and welfare benefit plans headquartered in New York, New York. (UFA Dkt. No. 5 ¶ 33.) The UFA Funds administer the assets of a defined contribution plan formed by a collective bargaining agreement between the City of New York and the Uniformed Firefighters Association. They provide benefits to approximately 35,000 beneficiaries who reside in numerous locations in the United States. (*Id.*)

Defendant AstraZeneca L.P. was a Delaware limited partnership headquartered in Wilmington, Delaware. It was dissolved on December 31, 2018, and all of its assets and liabilities were assumed by AstraZeneca Pharmaceuticals L.P. (Aff. of Matthew Bowden ¶¶ 4-5, Dkt. No. 107-7.)

Defendant AstraZeneca Pharmaceuticals L.P. is a Delaware limited partnership headquartered in Wilmington, Delaware. (CAC ¶ 40.)

Defendant AZ UK is an English corporation headquartered in London, United Kingdom. (*Id.* ¶ 41.)

Defendant Handa is headquartered in San Jose, California. (*Id.* ¶ 44.) While the EPPs allege that Handa is a California corporation (*id.*), Handa explains that while it was formerly a California LLC, in September 2016 Handa was registered as a Delaware LLC and is presently incorporated in Delaware. (Aff. of Stephen D. Cary ¶¶ 3, 8, Dkt. No. 107-9.)

Defendant Par is a Delaware corporation headquartered in Chestnut Ridge, New York.

(CAC ¶ 45.) Prior to March 2015, Par maintained its principal place of business in Woodcliff Lake, New Jersey. (*See* Decl. of Terrell T. Stevens, Dkt. No. 120-1.)

### B. Nature of the Action

This consolidated class action arises from two alleged conspiracies between and among Defendants to delay and suppress competition for generic versions of AstraZeneca's branded quetiapine fumarate extended-release tablets, Seroquel XR®. Each EPP indirectly purchased, paid and/or reimbursed for some or all of the purchase price for one or more Seroquel XR and its AB-rated generic equivalent in class state(s) during the class period – from September 29, 2011 until the anticompetitive effects of Defendants' challenged conduct cease. (CAC ¶¶ 34-39, 227; UFA Dkt. No. 5 ¶ 33). Since this action based on identical facts as the DPP Case, I will not recite the facts at length here. (*See* DPP Dkt. No. 90 at pp. 2-4.)

In short, generics manufacturers Handa and Accord Pharmaceuticals, Inc. ("Accord") were the first to file Abbreviated New Drug Applications ("ANDAs") for different strengths of generic Seroquel XR. (CAC ¶ 3.) AstraZeneca filed lawsuits against Handa and Accord in the District of New Jersey, alleging that their ANDAs infringed AstraZeneca's patent that protected Seroquel XR. (*Id.* ¶¶ 6-10.) Around October 1, 2011, AstraZeneca entered into two settlement agreements – one with Handa (which was assigned to Par in 2012), and the other with Accord. Under the settlement agreements, Handa and Accord agreed to delay their launches of generic Seroquel XR (in the strengths covered by their respective ANDAs) until November 1, 2016, and AstraZeneca agreed not to launch an authorized generic ("AG") Seroquel XR until May 1, 2017. (*Id.* ¶¶ 15-23.)

The EPPs allege that the settlement agreements delayed generic competition with branded Seroquel XR for up to five years and eliminated competition between the Handa/Par's and Accord's first-filed generics and AstraZeneca's AGs for 180 days thereafter. The presence of

additional generics would have resulted in lower prices. (*Id.* ¶ 18, 24.) Accordingly, the EPPs and members of the putative class would have been able to satisfy their requirements for extended-release quetiapine fumarate at significantly lower prices substantially earlier. (*Id.* ¶ 26.)

The EPPs assert various state antitrust and consumer protection causes of action against Defendants on their own behalf and on behalf of similarly situated persons and entities in forty states, Puerto Rico, and the District of Columbia who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price of brand or generic Seroquel XR, other than for resale, at any time during the period from September 29, 2011 (when AstraZeneca and Handa settled the patent litigation) through and until the anticompetitive effects of Defendants' challenged conduct cease. (*Id.* ¶ 227). Other generic competitors launched their own versions of generic extended release quetiapine fumarate in all strengths in or around May 2017. (*Id.* ¶ 22.)

Specifically, the EPPs assert five causes of action under various state laws: (I) monopolization against AstraZeneca; and against all Defendants, (II) conspiracy to monopolize; (III) combination and conspiracy in restraint of trade; (IV) unfair or deceptive trade practices; and (V) unjust enrichment. (*See* CAC ¶¶ 237-300.)

C. *Procedural Posture*

Defendants filed the same motion to dismiss in this case and the DPP Case. (*See* Dkt. No. 107; DPP Dkt. No. 68.) The EPPs have not submitted their own briefing on this motion; rather, they incorporate by reference all arguments in the opposition filed by the named plaintiff in the DPP Case, J M Smith Corporation d/b/a, Smith Drug Company ("Smith") (Smith Opp'n, DPP Dkt. No. 73). (*See* EPP Opp'n, Dkt. No. 116 at 3.)

By this court's order dated August 11, 2020, the DPP Case was transferred to the District of Delaware. (DPP Dkt. No. 90 ("Transfer Order.")) The Transfer Order turned largely on a valid

5

and enforceable forum selection clause in contracts between AstraZeneca and Smith. In this indirect purchaser action, Defendants cannot rely on any contracts between AstraZeneca and the EPPs. Nevertheless, transfer is warranted under § 1404(a).

For the reasons stated below, Defendants' motion to transfer is GRANTED.

## ANALYSIS

In this case, as in the DPP Case, it is prudent to address the motion to transfer before dealing with the contested issue of personal jurisdiction because all Defendants are either subject to general personal jurisdiction in the District of Delaware, or consent to such jurisdiction for the purposes of this case. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 385 (S.D.N.Y. 2010). Accordingly, this court will address Defendants' motion to transfer first.

Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

In the Second Circuit, when considering a motion to transfer pursuant to § 1404(a), courts generally apply a two-step analysis. First, the court must determine whether the action could have been brought in the proposed transferee forum. If so, the court must determine whether the convenience of the parties and witnesses and the interests of justice favor transfer. *See P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc.*, No. 14-cv-726, 2014 WL 6769377, at *1 (S.D.N.Y. Nov. 12, 2014) (internal quotations and citations omitted).

At step one, the EPPs do not contest that this case could have been brought in the District of Delaware. Each Defendant is subject to personal jurisdiction in Delaware: AstraZeneca

Pharmaceuticals L.P., Par, and Handa are incorporated in Delaware, and AZ UK consents to jurisdiction in Delaware for the purposes of this action.

At step two, Defendants bear the burden of making a "clear and convincing" showing that transfer is proper. *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am.*, Inc., 599 F.3d 102, 114 (2d Cir. 2010). Courts consider the following factors under § 1404(a):

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, . . . (7) the relative means of the parties . . . (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice.

*Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 850 (S.D.N.Y. 2017) (internal citations and quotations omitted). Here, the balance of these factors favors transfer to the District of Delaware.

### A. Plaintiff's Choice of Forum

Generally, courts give a plaintiff's choice of forum "considerable weight." *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 748 (S.D.N.Y. 2013). Several of the EPPs – SBA, IOUE, and the UFA Funds – are located in the Southern District of New York. Moreover, there is some connection between the operative facts and this district based the alleged overpayments by these New York-based EPPs.

However, the four remaining EPPs are not citizens of this district. They hale from Florida, Pennsylvania, Maryland, and Minnesota. The fact that plaintiffs are not citizens of nor have any particular connection to their chosen forum "diminishes the deference afforded [their] choice to litigate here." *City of Pontiac Gen. Employees Ret. Sys. v. Dell Inc.*, No. 14-cv-3644, 2015 WL 12659925, at *4 (S.D.N.Y. Apr. 30, 2015) (citing *Zepherin v. Greyhound Lines Inc.*, 415 F. Supp. 2d 409, 411 (S.D.N.Y. 2006)). As noted in the Transfer Order, any connection to this district based on Par's Rockland County operations is minimal because Par is a Delaware corporation.

Moreover, all EPPs in this action seek to represent a class of entities from forty states, the District of Columbia, and Puerto Rico. This "further diminishes the deference afforded [plaintiffs'] choice of forum" – even as to the New York-based EPPs. *City of Pontiac*, 2015 WL 12659925, at *4 (citing *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 405 (S.D.N.Y. 1998)). The EPPs' choice of forum "'is afforded little weight' in a purported class action, as here, where 'numerous potential plaintiffs [are] each possibly able to make a showing that a particular forum is best suited.'" *Freeman v. Hoffmann-La Roche Inc.*, No. 06-cv-13497, 2007 WL 895282, at *3 (S.D.N.Y. Mar. 21, 2007) (quoting *Eichenholtz v. Brennan*, 677 F. Supp. 198, 202 (S.D.N.Y. 1988)).

Here, the EPPs' choice of forum weighs in favor of transfer, but is afforded only "little weight."

B.  *Convenience of the Witnesses*

As noted in the Transfer Order, neither side specifies the key witnesses to be called or states what their testimony will cover. Where, as here, Defendants seek transfer on account of several factors, their "failure to specify key witnesses and their testimony is not fatal." *Pence*, 236 F. Supp. 3d at 856. In any event, both potential venues are located in the Northeastern United States along a major transportation corridor, which minimizes any difference in convenience.

However, this court has already transferred the DPP Case to the District of Delaware. The testimony of most – if not all – AstraZeneca, Handa, Par, and Accord witnesses will pertain equally to Smith's claims in the DPP Case and the EPPs' claims in this action. "[T]hose witnesses will be spared much inconvenience by being called to testify in a single trial in a single location." *Bent v. Zounds Hearing Franchising, LLC*, No. 15-cv-6555, 2016 WL 153092, at *7 (S.D.N.Y. Jan. 12, 2016) (citing *DISH Network, L.L.C. v. Am. Broad. Companies, Inc.*, No. 12-cv-4155, 2013 WL

8

1091318, at *3 (S.D.N.Y. Mar. 15, 2013)). Accordingly, this factor weighs in favor of transfer. *See id.*

### C. Convenience of the Parties

As noted above, several EPPs are located in the Southern District of New York; the others are located in Florida, Pennsylvania, Maryland, and Minnesota. Similarly, AstraZeneca is located in Delaware, Par is located in New York, and the other Defendants are located in California and the United Kingdom. Most parties would have to travel whether this case was heard in New York City or Wilmington.

However, "trying all claims in a common forum is far more efficient than bifurcating them," such that transfer to Delaware would greatly enhance Defendants' convenience without meaningfully adding to the EPPs' inconvenience. *See Bent*, 2016 WL 153092, at *7.

Here, the relative convenience of the parties slightly favors transfer.

### D. Trial Efficiency and the Interest of Justice

Turning to the public interest factors, as explained in the Transfer Order, Smith did not persuade this court that justice demanded that the DPP Case remain in the Southern District of New York. Smith's arguments are no more persuasive here. The alleged scheme that gives rise to this action – which purportedly has reached forty states, the District of Columbia, and Puerto Rico – is hardly a "localized controversy." The fact that the District of Delaware is busier than this already-busy district carries only marginal relevance.

Rather, the public interest weighs heavily in favor of transfer. In the Second Circuit, "there is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Goggins*

*v. All. Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003) (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968), *cert. denied*, 393 U.S. 977 (1968)); *see also Everlast*, 928 F. Supp. 2d at 747. Moreover, "Courts have routinely recognized this principle in granting transfers under section 1404 where related claims were already proceeding in another district or had to be transferred to another district pursuant a forum selection clause." *Pence*, 236 F. Supp. 3d at 854 (collecting cases).

This court has transferred the DPP Case – as well as three related direct purchaser cases – to the District of Delaware based on mandatory forum selection clauses in AstraZeneca's contract with Smith and other wholesalers. There is all but complete overlap in the allegations made by the EPPs here and those made by Smith in the DPP Case. *See Goggins*, 279 F. Supp. 2d at 234. (*Compare* Part VI, Facts, CAC ¶¶ 115-79 *with* Part VI, Factual Allegations, DPP Compl., DPP Dkt. No. 1 ¶¶ 85-147.) The only way to ensure that all related cases are litigated in a single forum – thereby avoiding duplicative discovery, wasted time and expense by parties and witnesses, and the risk of inconsistent results –  is to transfer this action to the District of Delaware.

The interest of justice weighs heavily in favor of transfer.

E.  *Remaining Factors*

Defendants concede that many of the remaining factors – the location of documents and ease of access to sources of proof, the relative means of the parties, the forum's familiarity with the governing law – are irrelevant.

In sum, the private interest factors point in different directions: the EPPs' choice of forum somewhat favors this district, while the convenience of the witnesses and the parties favors transfer. The public interest weighs decisively in favor of transfer. "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance

is essentially an equitable task left to the Court's discretion." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y. 2000) (citations and internal quotation marks omitted). Here, the balance tips toward transfer.

This court finds that transfer of this consolidated class action is warranted under § 1404(a).

## CONCLUSION

Defendants' motion to transfer this action to the District of Delaware is GRANTED. This constitutes the decision and order of the court. It is a "written opinion." The Clerk of Court is respectfully directed to close the open motion at Dkt. No. 107 and transfer this action to the United States District Court for the District of Delaware.

Dated:  August 12, 2020
       New York, New York

                         Chief Judge

BY ECF TO ALL PARTIES